Good morning, and may it please the Court. My name is Martin Desmarais, and I represent the appellants David and Karen Hathaway. I would like to reserve just three minutes for rebuttal. This is a bankruptcy appeal. It's a case where the bankruptcy of an insured has dramatically altered a creditor's right to collect a state court judgment directly from the debtor's insurance carrier. Everyone agrees that but for the bankruptcy, the carrier would have been liable to satisfy the judgment in full. Everyone agrees that bankruptcy is not supposed to affect a creditor's rights against non-debtors, and yet that's exactly what happened. Because Raytheon's plan of reorganization relieved Raytheon of its obligation to pay post-petition interest, the Hathaways can no longer exercise their statutory right as judgment creditors to recover that debt directly from the carrier. Well, they did, in fact, recover the debt. The question is, what about the interest? And the debt that I'm referring to is the debt for post-petition interest. It's our position that the rulings below constitute a clear violation of Section 524E of the Code. Isn't the predecessor question here the plan and what it means? Absolutely. Okay. So because if the plan did this, then even if it was wrong and should have been and everything else, it's still there and it still governs, right? Absolutely. So if that's the question, it seems to mean really nothing else. Well, there are two questions, and that's certainly the first question. And let me get right to that. If you look at the plan, the operative language is found in Article 7, which is entitled Provisions Governing Distributions. And Section 7.2 says specifically that post-petition interest shall not accrue or be paid on claims. These provisions governing distributions deal exclusively with distributions. That is, the cash or securities that creditors will receive from the bankruptcy estate. These provisions say nothing about what a creditor may or may not be able to recover from a non-debtor third party. Nowhere in the plan will you find a discharge of the obligations of third parties. The confirmation order does not enjoin creditors from pursuing third parties. And the disclosure statement expressly says that the plan does not discharge any obligations of third parties. And yet AIG argues that its protection lies in the plan and the Hathaways are seeking to avoid the plan. We are not seeking to avoid the plan. You don't really have a liability of a third party here. The third party's liability, the insurance company's liability, is to the insured, not to you. That's the whole conundrum of insurance. You don't get to go against the insurance carrier directly. I would respectfully disagree, Your Honor, because under Massachusetts law, once you have a judgment, once you are – once a tort creditor is a judgment creditor, then you have a right to proceed directly against the insurance carrier and to have the insurance proceeds reached and applied in satisfaction of the judgment. And that's why this plan is set up so perfectly for tort creditors. This plan directs tort creditors to leave the bankruptcy court in Nevada, go off to whatever non-bankruptcy forum has jurisdiction over the dispute, proceed with your lawsuit against the debtor in name only. And as long as there is enough insurance to satisfy your claim, then the bankruptcy court in Nevada never needs to hear from you again. The plan effectively removes fully insured – Kagan. I guess I see a lot of point to your argument, and I think the plan maybe isn't so clear about this. But there are two things that give me substantial pause about your position, and I would like you to address them. One is that the provision about interest on claims doesn't say pay. It says accrue or pay. Yes. So one question is why would it say that if it didn't mean that it's – the claim is going to be stripped of the interest before it sort of goes out the bank – outside the bankruptcy and begins to be litigated. And just to tell you what my other issue is while I'm at it, it's that I suppose one way one would explain this, why you would do this, would be it happens that there was enough insurance, but there could not have been. And if there wasn't, then dividing up between tortfeasors by stripping the interest would be one way to make it more fair. That's true. Let me address the first point about accrue or pay. And really, if I understand the point, it's how can we – how can the Hathaways argue that its judgment against Raytheon in name only includes postpetition interest if the plan says that postpetition interest can never be part of the underlying claim? But that's not what the plan says. Section 7.2 of the plan contains some very important qualifying language. And it states, quote, unless otherwise specifically provided for in this plan or the confirmation order or required by applicable bankruptcy law, postpetition interest will not accrue or be paid. What does that language mean? Because it has to mean something. Obviously, the plan contemplates that in some circumstances, postpetition interest may be paid to a creditor. And I submit, Your Honor, that the circumstances are right here in the plan. It's the provision which allows tort creditors to go outside of the bankruptcy process, get a judgment from a third party. I would read – counsel, I would read section 7.2 to say unless otherwise specifically provided for in this plan in another section. Do you have another section that would authorize the payment of postpetition interest here? Well, I would say that that part of it, the other section, is the section which deals with the whole scheme for how tort creditors are going to be paid, namely from non-estate assets. Does it say anything there about postpetition interest? It does not specifically say anything in there. This is a very specific – this is a very specific provision here. It would be unusual to think that this section referred to some general overarching principles. Well, but it does say or otherwise provided or under applicable bankruptcy law. Do you have bankruptcy law that suggests that postpetition interest here is commanded? Because this is required by applicable bankruptcy law. Yes. And the applicable bankruptcy law is section 524E of the Code, which says when you are seeking to recover that particular debt from a non-debtor, the bankruptcy adjusted liabilities of the debtor do not adjust the liabilities of the non-debtor.  It is clear, I gather, from the case law and logic, that if a bank – if a claim is paid 50 cents on the dollar through the estate, that that doesn't discharge – and there's a discharge at the end. The insurance company, you cannot sue the insurance company after that or before that for a tort claim. I must not have caught the question. I'm sorry. Here we have – what is your understanding of the law regarding whether if, unlike here, you did not send people off to litigate the tort claims and say whatever you get from the insurance company, you keep and the extra is what becomes a claim, but instead you simply kept the claims within the bankruptcy estate and discharged part of them because there wasn't enough money to pay, then could you go against the insurance company? It depends. There are some plans where insurance – where you have to have an allowed claim against the estate. This is actually the U.S. lines in the Bursch case. You have to have an allowed claim against the estate in order to recover anything. And the fact that insurance may reimburse the estate for whatever you're getting is irrelevant. But – Allowed usually means substantively allowed, i.e., is it a valid claim? Right. Right. But if it's simply a claim which is saying against the debtor, and this is an example of mine, if the claim says, you know, you only get 50 cents on the dollar, that's all you're ever going to get, and that's – and so you go out and you get a judgment, if you can collect that judgment from a non-debtor third party, like a guarantor or a general partner – Well, that's true. But the question – I mean, I think what Judge Barbee was saying is insurance company different, because the insurance company is only liable for whatever the debtor is liable for. But I thought the case law generally was that you could go after the debtor if for a discharge, partially paid debt. You could go after the insurance company, absolutely. And that's – there are dozens and dozens of cases where the debtor has no liability whatsoever to the tort claimant, and yet the tort claimant is granted the right to proceed against the debtor only, in name only, and recover available insurance. And this case is no different than any of those cases. But then we have this Bursch case, which is interesting and seems to say that there's a difference between a discharge claim and a disallowed claim. Yes, it does. But in Bursch, again, Bursch is the situation where the tort creditor is seeking to recover from the bankrupt entity. And the tort creditor was arguing in that case and in U.S. lines, well, what difference does it make? Because the bankrupt entity, all the money is coming from an insurance carrier. And it makes a big difference, because if you are trying to get an allowed claim under the bankruptcy code, then you have to comply with Section 502B. It doesn't matter what the plan says. 502B says you do not get interest against the debtor, where the source of that funds might be insurance, but it doesn't matter. The money, the distribution is coming from the debtor. If your rights are derived from the bankruptcy estate only, then the insurance company's liability is purely derivative of the bankruptcy estate. But if you have a separate and independent right to pursue the insurance company, like you would a guarantor or a joint venturer, then the insurance company is liable for that debt. And this may be in the record, and I've overlooked it, but what was the source of the judgment interest? Was it the order of the court, or was it pursuant to the statute, or what was the source of the obligation for it? It's part of the judgment that was entered in the Massachusetts state court. The judgment specifically included interest? It does. Is that in accordance with Massachusetts statutory law? It wasn't a result of some bad faith by the insurance company in not paying the judgment or something like that? No, it's purely the interest statute in Massachusetts. And then also the insurance statute, section 113, chapter 175, which says once you are a judgment creditor, once you have a judgment, you may proceed directly against the insurance company to have that judgment satisfied. So there's a direct act of statute in Massachusetts, as there is in many states. That's correct. But the interest obligation flows from a statute that says judgments in Massachusetts earn interest. Correct. All right. Thank you. And there's a component. There's the pre-judgment interest, and there's the post-judgment interest. I understand. Were they both involved here? Let me just think for a moment. Yes, actually. The judgment entered in 2006. So you have the judgment in the amount of approximately $8 million for the underlying claim, and then you have pre-judgment interest from the date of the filing of the complaint in 1999 until 2006. That judgment gets entered in that amount. That's actually $14 million. And then from the date of judgment forward, there would be post-judgment interest until the entire amount is paid. All right. Was the pre-judgment interest paid? In this case, because there was a settlement. I see your co-counsel nodding his head, affirmative. Yes, yes, yes. That's not fair. All right. In this case, just last year, the case went up on appeal to the Massachusetts Appellate Court. The Appellate Court found in favor of the Hathaway, so the underlying judgment has been affirmed. And what was paid by agreement of the parties is the full $8 million and all interest that accrued up until the date of the petition. And then everything else is subject to the decision of this Court. Thank you very much. I submit, Your Honors, that the error lies in the rulings of law by the Court below, which held that an insurance carrier's liability can be no greater than that of its insured. Now, that holding sounds very logical and appealing, and it's accurate in the non-bankruptcy context. But you can't say that insurance carrier's liability can be no greater than that of its bankrupt insured and still comply with Section 524A. And as I said, there are little dozens of cases that allow that.  I don't know why this is different. It's because there was a claim filed in bankruptcy. It was deflected to be liquidated in the State court, but it was also governed by 7.2 that says no interest accrues, and that that is attaches to the claim sort of as it goes off to be litigated in State court, so that there is the claim simply cannot accrue interest. And this is a claim, right, in the bankruptcy. Well, we certainly submitted a claim, and the claim is defined as a claim against the debtor. But it was ultimately, officially, actually disallowed as satisfied. Well, not this particular claim. Our claim was actually disallowed in a separate process because everybody knew that there would be enough insurance to allow the claim. That's what I meant. That's what I meant. Yeah, it was. It was disallowed. It was literally disallowed. That's an important point, because really the Hathaways have no right to recover anything from the bankruptcy of State. Postpetition interest, the underlying judgment, we have no right at all. Our claim has been disallowed. And yet they're only arguing about postpetition interest. I — my time is almost up. I have to — I think that there are — all of the arguments really boil down to two questions. First, would AIG be liable for this debt, but for the bankruptcy of Raytheon? And I think we all agree that the answer is yes. Does this plan contain a third-party release of AIG's liability? And the answer to that question is no. So if you look through the prism of Section 524e, where you have a plan that does not release AIG of its liability under State law, then I submit, Your Honor, that the decisions below did not comply with Section 524e. You're actually over time. We'll give you a couple minutes to rebuttal. Thank you. Thank you, Your Honor. Thank you. Good morning. Eric Brunstad on behalf of National Union. And thank you very much for accommodating our Irene-related travel confudelty. Oh, I didn't understand it was Irene-related, so I didn't really understand it. Okay, go ahead. In the time that I have this morning, there are a few points I'd like to make. And I would also like to specifically address some of the questions that were made before, because I think they kind of cut right to the heart of this. But the summary points I'd like to make is, I think we all agree, and it's been conceded, that the hathaways are bound by this plan. Whatever this plan provides, they're bound by it. And, of course, the bankruptcy judge interpreted the plan in his own order confirming the plan. And we submit, we put in our briefing, that should be entitled to substantial deference. Bankruptcy judges are experts in this. This provision we're talking about, Section 7.2 of the plan, is actually a standard feature of bankruptcy law. This is repeated over and over in plans. And actually, one of the things that's important about this case is that if opposing counsel's argument were correct, our bankruptcy system actually wouldn't work for the large cases like the Asbestos bankruptcy cases where claims have to be processed through the bankruptcy system because there's not going to be sufficient insurance. Judge Berzon, your question is very prescient on that point. And it's structured the way that it is because first claims are processed through the bankruptcy system. But this system provides for, I mean, the system set up by the orders and the plan here for the unpaid claims that cannot be paid by insurance to come back into the system. Correct, Judge Berzon. As claims, as Rank 7, Class 7 allowed claims, right? Correct. The general unsecured claims, correct. One question I have, just a literalist question about the plan, is that 7.2 has the first sentence, but it also has the second sentence. Yes. Interest shall not accrue or be paid upon any disputed claim. And this is a disputed claim because the plan says all. Correct. Right? In respect to the period, from the period petition date to the date of final distribution if and after such disputed claim becomes an allowed claim. Why isn't the negative pregnant of that is that if it never becomes an allowed claim, as this one didn't because there was nothing left over to be paid, that it isn't subject to that? And what's that second sentence there for anyway if the first one covers everything? Very simple, Judge Berzon. I've negotiated these plans myself, and this, again, is a standard sentence that covers the following situation. Oftentimes we have claims that are filed in bankruptcy, and we know what they are at the time of plan confirmation. And so when the plan is confirmed, we then make a distribution on all the claims. Sometimes, however, we don't know what the claims are until after the plan has been confirmed. So there's going to be a lag between when the bankruptcy case is over and most of the claims are paid and when this particular claim is decided later. Now, claimants come in and they say, well, we're not entitled to postpetition interest, but, aha, we have a different theory. Because we weren't paid at the same time as all the other general unsecured creditors, we should get interest on that gap period. This second sentence eliminates that as well. That's what the purpose of this sentence is for. And that's interesting background information, but it does have this if provision, which seems to say that all this only applies if it becomes an allowed claim. And this one never became an allowed claim. Well, that's because it was disallowed under the tort claim procedures provisions. But I think the most important language is in the first sentence, which says that postpetition interest shall not accrue. This codifies over a century of bankruptcy law. Vanston Partners, Bruning, Section 502. Postpetition interest in bankruptcy is not allowed, period. And an insurer is never liable for more in indemnity than what the insured is liable for. What they're trying to do here is increase the insurer's liability beyond what it contractually is obligated to pay by saying, oh, no, we get postpetition interest. That's not the law. And yes, Your Honor. You would be contractually obligated to pay this interest, but for the bankruptcy of the tort fees, correct? Yes, but for the fees. I'll stop right there, because I have a follow-up question. Usually, a rule of law has a good reason behind it. It serves an important purpose. And I'm wondering if the purpose of the rule is being served in this case. I suspect, as suggested by Judge Miby, that one of the purposes for this rule against postpetition interest is in recognition of the fact that there usually aren't enough assets to go around to pay all the creditors in full. So we're not going to aggravate the situation by paying postpetition interest. But that's not involved here, is it? Your client would be liable for this interest, but for the bankruptcy. Well, that's right, Judge Gray. So how is the underlying purpose of the rule served here? Well, the purposes are set forth in the Banston decision, the Supreme Court's decision, particularly Justice Frankfurter's concurrence in that case back, I think, in the 1940s. And Section 502b2 of the Bankruptcy Code codifies that rule. And one of the reasons is, for example, say you have this judgment would get 12 percent interest, but some other claimant, the other unsecured creditors, might be entitled to only 3 percent interest. You can see what happens in bankruptcy. It all makes perfect sense when you're talking about distributions. And as was pointed out, Article VII is about distributions. This isn't a distribution from the bankruptcy estate in any ordinary sense of the term. That that – well, but it would be. Again, we go back to, I think, the basic point, was that an insurer is never liable more than the insured is liable. But that's not true here. What about the situation where there's a mischarge? Do you disagree that if there were – if this was a no-assets insurance bankruptcy estate and the discharges – the whole debt was discharged, you couldn't go after the insurance company? But that was the point of the point of the case. Is that your position? I drew a distinction between discharged debts and disallowed claims, which the A circuit did emerge. But the answer is you could go in that situation. So it isn't true that they're not liable for any more than the debtor is. No, it is true, Judge Berzon, because where you have the debtor is discharged, the debtor was liable. It's just that the debtor – the discharge excuses only the debtor. Where you have a claim that is disallowed – this was the point of the Birch case, which was a postpetition interest case. The Birch – in the Birch case, the Eighth Circuit said very clearly, the debtor is not liable for postpetition interest. But disinterest is not disallowed either. Disallowed is also a term of ours, and disallowed usually means it's not meritorious. No, Your Honor, this is actually even more powerful. Or you are satisfied or it's paid off. This is even more powerful than that, because the plan itself says that postpetition interest shall not accrue. Now, that is exactly what Section 502b2 also says. Section 502b2 says that unmatured interest, interest after the petition date, is to be disallowed. So if this had not been disallowed, it would have been for that reason as well. Does it use the term disallowed? 502b2 does, yes. And 502b2, if you look at legislative history, is – is – it says in the legislative history postpetition interest does not accrue. This plan provision tracks the statute. The statute says postpetition interest must be disallowed. It's mandatory. And the legislative history explains what Congress meant is that it doesn't accrue. It's not a liability of the debtor. And all that this plan does is codify this provision of law. And it binds – and by concession, Section 7.2 binds the hathaways. They had an opportunity to – It was also true, I think, I think, you can tell me if I'm wrong, but it's all right, that sequentially, at the time this interest provision was written, the provisions about how you're going to deal with the tort claims weren't in the plan. I'm sorry, Your Honor? That, from what I can see, this provision about interest on claims predated the provision that dealt with how the tort claims were going to be dealt with under the plan. Yes, Justice Breyer. This interest provision would have been in the plan from the beginning. It's a boilerplate provision that's in every single plan, because that is our law. Our law – and that's the way it's been for 100 years. You do not get postpetition interest. But one way of thinking about this is that the part that dealt with the tort claims essentially threw them out of the bankruptcy and said, go off there and deal with them. No, Your Honor, that can't be right. Unless and until there's not enough insurance to satisfy them. That can't be right. At which point, come back. I'm sorry, Your Honor? At which point, come back. I mean, and you'll have Class VII-allowed claims. But that can't be right, Your Honor, and for the following reason. His argument is that Section 524e does not allow us to basically – Let's forget about 524e. But that's the whole basis for his argument. I know, but let's just look at the plan. Okay. Yes, Your Honor. And the orders. But I would like to be clear that that is his only argument. And so if he's wrong on that point, he's already conceded that the plans bind the Hathaways and that the plan does not allow postpetition interest against the debtor. So what we have to say is that there's some way to cause the survival of the postpetition interest, even though Raytheon is not liable for it, and there's some way that we make the insurer liable for the postpetition interest, even though the debtor doesn't, which violates the fundamental principle of insurance law as a contract between the insurer and the insured, that they're only liable for what the insured is liable for. He wants to do it. But you already said that isn't true if there's a discharge. So that's just a – it becomes a technicality at that point of how it's treated in bankruptcy. It's not a question of the insurance contract that you seem to be standing on. No, Your Honor, because that's inherent in what a discharge does. And what we're not talking about here is a discharge. The discharge under Section 524 excuses the debtor of personal liability for the debt. What we're talking about here is limiting the debt itself. Federal law, Section 502, limits the debt, the obligation itself. It constricts it. It says you do not accrue interest after the petition date. That's fundamentally different from the discharge provision, which says, whatever debt it was, you, the debtor, are not personally liable for it. Judge Graham, I'd like to correct one point. Massachusetts is not a direct action state. There are some states which are direct action states where the plaintiff can go directly against the insurer and the insurer's obligation is independent of the insurer. There are different kinds of direct action statutes. Some of them require a judgment first. Correct. And that's what Massachusetts requires. Correct. And the Rogin case from the 40s says, you know, you have to have liability of the insured first because under Massachusetts law, like the standard rule is, it's an indemnification obligation. If the insured is not liable, neither is the insurer. But once the judgment is rendered and begins to accrue interest, then there can be a direct action against the insurer. The policy proceeds are available, but again, the question becomes, what is the liability for which the insured is obligated for? And I think you're saying, yes, this may be a windfall, but this is the law. Well, but the Eighth Circuit, I think, there's – it's not a windfall, Judge Graham. What it is, is it's no more of a windfall than when Federal law preempts, for example, plaintiffs from bringing suits for labeling reasons or pharmaceutical reasons or whatever. Well, it's a windfall in the sense that you'd have to pay it, but for the bankruptcy. That is true. But for Federal law, in lots of contexts, plaintiffs would be entitled to their claims. I think it's important to focus on the specific language of 524E, which is reproduced in page 37 of the red brief. It says that a discharge of a debt of the debtor does not affect the liability of any other entity on or the property of any such entity for such debt. All that the discharge does is it discharges the debtor's personal liability. It doesn't affect the liability of some other party. Well, what is the liability of the insurer in this case? It is to pay what the debtor is obligated to pay. So this is not a discharge question. This is what is the debt that Raytheon actually has. And the Hathaways have already conceded that Raytheon is not liable for the postpetition interest, and that is what the plan says. But the plan doesn't just say that the debt shall not be paid. It says that postpetition interest shall not accrue. Now, that's critical. And, again, that is in every single Chapter 11 plan that's out there, because, again, that codifies the law, 502B2. Now, why? Why is that so important? Because that's how our bankruptcy system works. The claims are processed in bankruptcy first. The extent of the liability is done first. Then we talk about payment. Okay. So the insurance proceeds are here to pay claims, but they're not available to pay more than what bankruptcy law actually has. Why? Because in the large asbestos bankruptcy cases, for example, where the amount of the claims vastly overwhelmed the insurance proceeds, you wouldn't be able to reorganize those businesses in bankruptcy and create those kinds of trusts if you didn't recognize that postpetition interest and things like that can be modified in bankruptcy and that Section 524E doesn't apply. Again, because the Hathaway's argument is that it's really 524E which basically says that the insurer is liable for this, but that can't be right. Our bankruptcy system wouldn't work. And I think it's also important to explain a point that was raised before. This provision of Section 7.2 of the plan, which basically says, as required by applicable bankruptcy law, what does that mean? Well, there is a specific statute that requires postpetition interest to be paid. It's Section 506B of the Bankruptcy Code. And that only applies to oversecured creditors, where a creditor has a security interest in the debtor's assets and the value of the property that's the collateral exceeds the amount of the debt. By statute, Congress has said that is when postpetition interest can be paid. In all other circumstances, 502B2 says postpetition interest is disallowed. Postpetition interest does not accrue. So if Congress had wanted postpetition interest to be paid in other circumstances, it surely would have said so like it did in Section 506B. It didn't. And again, 506B is an exception to a century-old rule. Postpetition interest does not accrue in bankruptcy. It stops on the petition date. Thereafter, it is not a debt that can be enforced. It's not a debt at all. What the Bankruptcy Code does in Section 101, it defines what a claim is. And a claim is a right to payment, no more, no less. The Supreme Court has told us that again and again, Cohen v. De La Cruz, case after case. Every single right to payment that's out there against the debtor is put into the bankruptcy process to be processed. That's why we have it. And we have this claims allowance process under Section 502, which tells us what's a valid claim and what isn't. Sotomayor, the ultimate question is, what did this plan mean? Yes, Judge Bezan. Sent the claims that were covered by insurance off to be liquidated and paid outside the bankruptcy system if possible. Yes. And only if there were an overage to come back in as a claim. I mean, one way to read all of this is that essentially, once they went off and were satisfied, there weren't claims anymore. Why not? No, Judge Bezan. There are always claims. And this plan treats them as claims. They filed a proof of claim recognizing that this is a claim. The bankruptcy process worked on these claims. The provisions of the plan say so. Now, Judge Zive, the bankruptcy judge who reviews this, sees these things all the time. And he's an expert in these kinds of documents. And he reviewed this. And I submit, his interpretation of the plan not only is correct from its clear terms, but it's also entitled to substantial deference. Now, the Ninth Circuit hasn't ruled on that particular point yet, but other circuits have. And they've consistently, other than perhaps for the Second Circuit, have taken the view that when the bankruptcy judge decides this, it's entitled to substantial deference. So not only is this language clear, but Judge Zive, who understands these and sees these all the time, construed it correctly. And I submit, again, that is entitled to deference. And again, our bankruptcy system, if somehow claims were not claims that could be treated outside the bankruptcy process, our bankruptcy system ultimately wouldn't work, because it's a collective proceeding that requires capturing everybody. And if you can't, then people can come and start doing things. Sotomayor, it was captured, it was in the system, but it was then prescribed how it was to be dealt with. And the question is whether the prescription in the plan was go off and treat this as a regular case in State court, and only if your judgment isn't satisfied, come back. And therefore, the notion that it was the interest was stripped off first is possible, but there's certainly nothing saying it expressly. And I do think the second sentence of that 7.2 somewhat cuts against you. I understand you're understanding what it means, but it could also be retchamine, that unless it's an allowed claim, this doesn't operate. No, Judge Beerson. All that Section 8.2 of the plan says is that instead of the bankruptcy court conducting the jury trial and litigating the claim, we're going to allow that to happen in the State court system. And once you've got the process. I was talking about 7.2, the second sentence of 7.2, and the fact that this is, this never became an allowed claim in bankruptcy overall. Well, I think that's the plan, and in fact, the way it was treated at the end, it was treated as a satisfied, zero-sum claim. But literally all that the second sentence does, Judge Beerson, is it talks about a period, a limited period of time, the, the, from, from the petition date until when a claim becomes an allowed secured claim, that's all that it does. And during that period, gap period of time, interest doesn't accrue. So it, but it, again, it covers a very, a distinct problem. That's when it never did become an allowed claim, it doesn't operate. Well, then you would say the second sentence is irrelevant, and then we're back to the first sentence, which says post-petition interest shall not accrue. Now, on the first sentence, there are only two exceptions. One exception is where the plan otherwise provides, and this plan doesn't. And the second is where bankruptcy law specifically requires post-petition interest to be paid, Section 506b. That also doesn't apply. So the absolute prohibition that post-petition interest shall not accrue or be paid on claims, and this is concededly a claim, the Hathaways have said since the beginning, this is a claim. Judge Zive said this is a claim. This is a claim under the statutory definition of a claim and under the definition of the plan. The prohibition on interest shall not accrue or be paid on claims applies. And there's nothing in the second sentence of Section 7.2 that takes away from that prohibition. It simply is cumulative and says in the addition – in the circumstance where the claim is not going to be paid right away upon the conclusion of the plan, which happens mostly, you also don't get post-petition interest. Alitoson, does either Raytheon or the insurance company have some kind of a reliance interest here on 702? How would the insurance company or Raytheon have behaved differently without this bar on post-petition – on the accrual of post-petition interest? Well, there is a big reliance issue, Your Honor, Judge Bidey, because with interest accruing at 12 percent, this judgment doubles every so often, and – Which suggests that you might not have engaged in this litigation, but I assume that's not really an interest that we're going to take into account here. There's no other reliance interest other than the fact that you might not have – you might have made a different strategic decision about whether to defend the litigation or not. Well, not only that, but it gets very complicated when these debtors are reorganizing from bankruptcy, because not only – and they're going to emerge – because not only do they have their pre-petition insurance, oftentimes their insurers stay as their insurers. It doesn't really suggest that Raytheon would have behaved any differently in securing insurance. And you haven't suggested that the insurance company would have, in effect, insured itself against the bankruptcy of its insurer. You haven't outlined any steps that the insurance company would have taken to have protected itself against post-petition interest. Well, insurers, as Your Honor may well know, often reinsure with – they reinsure their insurance with reinsurers. And so they periodically gauge what their liability is going to be, and then they go ahead and they put it – they buy reinsurance policies from third parties. And when we have these plans of reorganization that says you don't get post-petition interest on tort claims, well, then the insurer knows what its liability is going to be and can take steps accordingly. And I assume that National Union did so in this particular case. Now, all of a sudden, in spite of this clear – You described some circumstances in which the prohibition on the approval of post-petition interest might be important, that there might be some kind of a reliance issue because of the uncertainty in what claims would be filed. That's not really – that's not really the case here. Your client really is getting the benefit of a – of a very strict and explicit rule for which it perhaps wasn't really intended to be the beneficiary. Well, no, because oftentimes, Judge Bibas, we don't know on the date of confirmation whether or not there's going to be sufficient insurance. Now, why do I say that? Because when people are injured and they have claims, their claims might not be determined for many years after the bankruptcy case is over. So oftentimes, we see a situation in which we think the tort claims are going to come in at $2 million or $3 million, and lo and behold, guess what? Five years after the plan, they are now $25 million, $30 million, $40 million. And guess what? We thought there was going to be adequate insurance, but now there isn't. I'll just – someone on the side, and you're way over your time, so I will stop you after this. How does the insurance situation work if there is – are excess claims? Whoever gets there first gets paid and everybody else comes back to the bankruptcy with a Class VII claim, or what? Well, Judge Breslin, that's a great question, because that's why we have the law the way we do with the prohibition on post-petition interest. I'm trying to get beyond that. Leave the interest out of it. Even if you have – don't have – assuming you're right, you still have the problem. Well, and that's why what we try to do is we try to – you know, one of the major themes of bankruptcy law is pro rata distribution. I understand that, but this plan, the way it's set up, doesn't tell you. And it seems pertinent to me what it was thinking about the interest. It doesn't say anything about what happens if there's – as between the people who are covered by the same insurance policy, if one of them gets there first. To the insurance policy. Outside of bankruptcy or in bankruptcy? Outside the bankruptcy. Outside of bankruptcy. Well, you know, then, I mean, if we have a solvent debtor, then – No, no. All right. It's not worth it. I want to try to understand Your Honor's question. My question is this. There is a bankruptcy. Yes, Your Honor. This plan says go off and get a judgment and get the money from the insurance company. But it also says if there's – if the insurance company can't pay it all, come back. Yes, Your Honor. Right? Now, who decides – or nobody seems to decide if there are five people covered bringing a lawsuit, all of which would be paid by the same insurance company, who does the insurance company pay? Whoever they feel like paying? What would happen in that situation – and this actually has occurred on occasion – is then you have to go back to the bankruptcy court and say, look, we've got 24 claimants. We thought we have enough insurance. We don't. Now we have to allocate it between them. And then the bankruptcy court can then make a readjustment as to the allocation of the insurance proceeds after the fact. And this plan actually has that feature built into it if, in fact, that was the case. But nobody thought it would be remotely likely, so it wasn't triggered here. But I think the – in closing, the final point is just that what they are asking the Court to do is not only create a circuit split with the Eighth Circuit, but also – also to expand the insurer's liability beyond what the law allows and to make the insurer not simply liable for what the debtor is liable, but for something more. Thank you, Your Honor. All right. Thank you very much. Yes, sir. We'll give you about four minutes since he went way over. Go ahead. I don't believe I'll need that much time. I'm just happy that – you mentioned the asbestos cases, and that's a good contrast to this case, because in the asbestos cases, the big toxic tort cases, what happens in those cases is that the insurance companies pay hundreds of millions of dollars into a trust. And if you're a creditor, if you're an asbestos victim, you actually have to prove a claim in bankruptcy against that trust in order to get the insurance money. And the reason why that's important is because that's not this case, okay? The insurance companies did not pay money into the bankruptcy estate to be distributed. Here, as I've said, the tort creditors were told to just go chase those insurance companies. I promise you the Bankruptcy Court in Nevada was not confirming this plan for the benefit of the insurance companies. And what's happened over the years – and this case, I understand, at least the last time I checked, is still open, even though the plan was confirmed in 2001, 2002, because as – and there were thousands of tort claims, by the way. As the claims become fixed, and you find out if there's enough insurance or not enough insurance, they make interim distributions. And I don't know what they're up to now, but they have this estimation process, and periodically over time, they make interim distributions. And so that's how we deal with it. I shouldn't assume that Judge Zeev knew what the plan that he confirmed meant. He's a smart man. He's a very smart man. He's a very good judge. I think – I don't think Judge Zeev reviewed this from the context of Section 524E. And he said, in his opinion, which was repeated in the district court, that an insurance company is only liable for what the insured must pay. And as I said before, that's an overly simplistic view of the situation in bankruptcy. What I submit – what has happened in this jurisdiction, which is, you know, renowned for not allowing any exception to 524E, in this jurisdiction now, we have an exception. It's the insurance exception. To the extent an insured's obligations have been altered by bankruptcy, the insurance company gets to tag along. We submit that's improper. Thank you very much. Thank you very much. Thank you both for good arguments and an interesting case. And go off and get your airplanes. We will go back to the beginning of the calendar then. This case is submitted.
judges: Berzon, Bybee, Cjj Graham (S. Ohio), Dj